The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act, and are properly before the Commission.
2. On January 5, 1996, Defendant, Zurich-American Insurance Group was the workers' compensation carrier at risk.
3. On January 5, 1996, Plaintiff suffered a compensable injury by accident to her back, while employed by Defendant, Interim Healthcare.
4. The Form 21 approved by the Commission on February 14, 1997 needs to be amended to reflect that Plaintiff's average weekly wage was $191.75.
5. Plaintiff is seeking ongoing total disability benefits beginning August 19, 1996.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a female who was 48 years of age at the time of the hearing. Plaintiff is a high school graduate who also received additional training at a community college and was certified as a nursing assistant. Prior to receiving her C.N.A. training, Plaintiff had also worked in food service, preparing and serving meals in the school system.
2. Plaintiff had worked as a certified nursing assistant for other employers and began working for Defendant as a C.N.A. in November 1995. Plaintiff's duties required her to care for patients in their homes, and included helping patients walk, use the toilet facility and take baths.
3. Plaintiff had a history of over ten years of a multitude of physical problems. She had been under the care of her family doctor, Dr. Margaret Nelson Harker, since 1984, with problems of diabetes, hypertension, obesity, dizziness, sinus headaches, back pain, and arthritis in her knees.
4. On January 5, 1996, Plaintiff suffered an injury by accident to her back while lifting her father, who was also her patient, from a bed to a bedside commode. During the transfer, the patient lost his balance and Plaintiff grabbed him so that he would not fall. As Plaintiff did so, she felt her back snap. This injury by accident was the subject of the Form 21, which was approved by the Commission on February 14, 1997, and which has been amended by agreement of the parties to reflect an average weekly wage of $191.75.
5. On January 9, 1996, Plaintiff was sent by the Employer to see Dr. John T. Langley, an orthopaedic specialist at Onslow Doctors Care, Inc. Dr. Langley initially diagnosed Plaintiff with lumbosacral strain and took her out of work for five days with bed rest for three days. Thereafter, Dr. Langley continued to keep Plaintiff out of work until January 29, when he released her to return to light duty work, with no lifting over twenty pounds.
6. It is not clear whether the Employer was aware of Dr. Langley's release for Plaintiff to return to work until around February 12, 1996, when Dr. Langley had again indicated that Plaintiff could return to work. On or about that date, Katherine Pullicino, a nurse and office manager for Employer spoke with Plaintiff regarding a return to light duty pursuant to Dr. Langley's recent note. The Employer had clerical office work available, which was within Plaintiff's restrictions. However, Plaintiff declined to do this work.
7. Plaintiff was seen by Dr. Langley again on February 27, 1996. Dr. Langley's examination on that day was normal with no sensory, motor or reflex deficit. His assessment continued to be lumbosacral strain. Dr. Langley planned to see her in follow-up in two weeks, at which time he anticipated she would be discharged. Contrary to her conversation with Katherine Pullicino, Plaintiff advised Dr. Langley that her employer had no light duty available and that she had gotten another job at Wal-Mart.
8. On February 29, 1996, Katherine Pullicino received notice from the case manager for Plaintiff's father and patient, that Plaintiff was going to work for another agency beginning March 4. On March 4, 1996, Plaintiff went to work as a cashier for Wal-Mart and worked for approximately one and a half weeks.
9. Plaintiff returned to Dr. Langley on March 19, 1996, with complaints of increased back and right leg pain. Due to her continued complaints, an MRI was scheduled for April 9. The MRI results indicated a small herniated disc at L5-S1 and Dr. Langley referred Plaintiff for evaluation by Dr. Ira Hardy, a neurosurgeon specializing in back surgery. The employer received Dr. Langley's note taking Plaintiff out of work and restarted her temporary total disability compensation benefits.
10. On April 22, 1996, Plaintiff was first seen by Dr. Hardy. He performed an examination, and reviewed the x-ray and MRI films. Plaintiff's neurological examination was normal. Dr. Hardy interpreted the MRI as showing a small central disc bulge and ordered a myelogram and post-myelogram CT to better assess any nerve root involvement. Dr. Hardy kept Plaintiff out of work until the myelogram could be completed.
11. The myelogram, done on June 12, 1996, confirmed the disc bulge at L5-S1; however, there was no evidence of nerve root encroachment which would warrant surgery. Dr. Hardy saw Plaintiff on a follow-up visit on June 15, at which time he noted that the myelogram was essentially normal, and failed to give any objective evidence to explain Plaintiff's complaints of right leg pain. Dr. Hardy proceeded with conservative treatment, including two weeks of physical therapy at Carteret Physical Therapy Associates in Morehead City. Following her physical therapy, Dr. Hardy's plan was that Plaintiff should return to work at light duty, beginning at one half days for two weeks and then moving up to full days.
12. On July 8 and 9, 1996, Plaintiff returned to light duty work for Employer for two and a half-hours per day. She was assigned to assist in clerical duties in the office, which she had no problems performing. Plaintiff's duties included answering the telephone, doing filing and checking references for persons applying for employment, and involved some sitting and some standing. These were regular duties performed by other employees of Defendant, which Plaintiff assisted. This was not work which was specifically crafted or made up to accommodate Plaintiff.
13. Plaintiff had been seen by Dr. Harker on June 25, 1996, with complaints of her right leg and ankle swelling. Dr. Harker's assessment was cellulitis of the foot, along with diabetes. It was Dr. Harker's opinion that the cellulitis was causing Plaintiff's right leg pain, and she explained this to Plaintiff at that time.
14. Plaintiff saw Dr. Harker again on July 5, with the same complaints and they had a long discussion about Plaintiff's condition. On July 10, 1996, Plaintiff was hospitalized for deep vein thrombosis in her right leg, and remained under the care of Dr. Harker. Due to this condition, Plaintiff was temporarily unable to return to work. On her visit of July 25, 1996, Dr. Harker released Plaintiff to return to work with no long standing and no long sitting.
15. On July 31, 1996, Plaintiff was seen again by Dr. Hardy, at which time he noted she was doing better and that the physical therapy had helped her. Her gait was normal and her examination was normal. By this time, Dr. Hardy found that she was at maximum medical improvement from her back injury, with a five percent permanent impairment to her back. He discharged Plaintiff from his care and released Plaintiff to return to light duty work as defined by the Dictionary of Occupational Titles, with restrictions of exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly, with physical demands in excess of those required for sedentary work. Dr. Hardy suggested that she return to work gradually beginning with 4 hours per day for a week, then 6 hours a day for 2 weeks, working up to an 8 hour day with no lifting, pushing or pulling over 20 pounds as a permanent restriction.
16. Although Plaintiff could not return to work for the Employer in her previous position as a certified nurse's assistant, the Employer still had clerical duties available. Plaintiff returned to work for Defendant-employer in this light duty position on August 5 and 6, 1996. However, after August 6, Plaintiff made no attempt to return to work for Defendant-employer and did not provide Employer with any physician's notes excusing her from work.
17. Since he released Plaintiff to return to work in July, 1996, Dr. Hardy has not taken her out of work. Dr. Hardy saw Plaintiff again on January 6, 1997 and February 25, 1998, when his assessments of her condition did not change. He has assessed her with a chronic back strain, which does not prevent her from returning to gainful employment, within the restrictions he had previously given.
18. As her family physician, Dr. Harker has continued to follow Plaintiff for her other physical problems, including obesity, diabetes, thrombosis, arthritis, and hypertension. Although Dr. Harker has stated her opinion that Plaintiff is not capable of returning to gainful employment, it is clear that this opinion is based upon Plaintiff's myriad of other physical ailments. Dr. Hardy's opinion is more pertinent and persuasive regarding any impact of Plaintiff's back injury on her ability to return to gainful employment.
19. Plaintiff's back injury had resolved to the point of maximum medical improvement by July 31, 1996, leaving Plaintiff with a five percent permanent impairment, which was not a significant factor in Plaintiff's inability to return to work thereafter. Plaintiff's right leg problems were not due to her back injury, but to her thrombosis. While her lifting restrictions were related to her back injury, the sitting and standing restrictions imposed by Dr. Harker were due to Plaintiff's leg problems, her cellulitis, thrombosis and arthritis. The primary factors preventing Plaintiff from returning to work after July 31, 1996 were her other physical ailments, which were not significantly aggravated or contributed to by her back strain.
20. Plaintiff had returned to work for Defendant at light duty and was not receiving ongoing benefits at the time she unilaterally stopped working in August, 1996. The duties Plaintiff was performing continued to be necessary and Defendant-employer had work available for Plaintiff after that date. No physician had taken her out of work at that time or subsequent thereto due to her back injury. The evidence otherwise fails to show that Plaintiff is incapable of earning wages in the same or other gainful employment due to her back injury.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of her compensable injury by accident sustained on January 5, 1996, Plaintiff sustained a back strain, which resulted in periods during which Plaintiff was temporarily totally disabled up until June 15, 1996, and for which Plaintiff has been compensated by Defendants pursuant to the Form 21 previously approved. Plaintiff had returned to work for Defendant-employer as of August 5, 1996 and she has the burden of proving any disability thereafter was caused by her compensable injury, which Plaintiff has failed to establish. N.C. Gen. Stat. §§ 97-2(6), 97-29.
2. Even if the undersigned should conclude that the Defendant must rebut a presumption of ongoing disability, the evidence sufficiently does so. The greater weight of the evidence establishes that any inability Plaintiff may retain to return to gainful employment is due to her numerous other physical ailments, which are not causally related to and which were not significantly aggravated by her compensable back injury. N.C. Gen. Stat. §§ 97-2(6), 97-29; Stone v. G G Builders,346 N.C. 154 (1997).
3. The parties having agreed that the average weekly wage reflected on the Form 21 should be revised from $123.90 to $191.75, Plaintiff is entitled to payment of compensation for the difference between her prior compensation rate of $82.60 under the Form 21 and the proper compensation rate of $127.83 for all periods of temporary total disability previously paid by Defendants. N.C. Gen. Stat. §§ 97-2, 97-29.
4. As of July 31, 1996, Plaintiff had reached maximum medical improvement with regard to her back injury. She retains a five percent permanent impairment to her back for which she is entitled to compensation for fifteen weeks beginning July 31, 1996 pursuant to N.C. Gen. Stat. § 97-31(23).
5. Defendants are responsible for payment of all medical bills incurred by Plaintiff for treatment rendered which was reasonably necessary to effect a cure or give relief, including the treatment rendered by Dr. Hardy, but not including the treatment by Dr. Harker, which was not related to Plaintiff's back injury. N.C. Gen. Stat. §§ 97-2(19), 97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by Plaintiff as the result of her compensable injury by accident to her back, for treatment which was reasonably necessary.
2. Defendants shall pay Plaintiff the difference between the benefits previously paid at the rate of $82.60 under the Form 21 and the proper compensation rate of $127.83 for all periods of temporary total disability previously paid. Such benefits having accrued they shall be paid in a lump sum, subject to the attorney's fee approved hereafter.
3. Defendants shall pay Plaintiff compensation at the rate of $127.83 per week for fifteen weeks beginning July 31, 1996 for her five percent permanent impairment to her back. Such benefits having accrued, they shall be paid in a lump sum, subject to the attorney's fee approved hereafter.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded Plaintiff herein is approved for Plaintiff's counsel. Twenty-five percent of the lump sum accrued and due Plaintiff shall be deducted therefrom and paid directly to her attorney.
5. Defendants shall pay the costs.
This the ___ day of May 1999.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/bjp